ORAL ARGUMENT NOT YET SCHEDULED

**Nos. 23-3207, 23-3223**

---

United States Court of Appeals
*for the*
District of Columbia Circuit

---

UNITED STATES OF AMERICA,
　　*Appellee/Cross-Appellant,*

v.

SHANE JENKINS,
　　*Appellant/Cross-Appellee.*

---

On Appeal from the United States District Court for the
District of Columbia, No. 1:21-cr-00245-APM-1

---

**BRIEF FOR APPELLANT/CROSS-APPELLEE SHANE JENKINS**

---

Shon Hopwood
Kyle Singhal
HOPWOOD & SINGHAL PLLC
1701 Pennsylvania Ave., N.W.
Washington, DC 20006
Telephone: (202) 769-4080
kyle@hopwoodsinghal.com
*Counsel for Shane Jenkins*

**CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES**

Pursuant to D.C. Circuit Rule 28(a)(1), Shane Jenkins hereby states as follows:

### Parties and Amici

The parties to these consolidated appeals are appellant/cross-appellee Shane Jenkins and appellee/cross-appellant United States of America. There are no amici.

### Rulings Under Review

Mr. Jenkins's appeal, No. 23-3207, challenges the judgment and sentence imposed by Hon. Amit Mehta following the jury trial in Mr. Jenkins's criminal matter. A99-107. Mr. Jenkins also challenges the district court's denial of a motion to dismiss Count Two of the indictment, A124, and the district court's denial of an unopposed motion for bench trial, A121. The government's appeal, No. 23-3223, to the best of Mr. Jenkins's knowledge, challenges the sentence. A108. No official citation to these rulings exists.

### Related Cases

There are no related cases.

# **TABLE OF CONTENTS**

Table of Authorities ................................................ iii

Jurisdictional Statement ........................................... vi

Statement of the Issues Presented for Review ........................1

Statement of Statutes and Regulations................................2

Statement of the Case...............................................5

Summary of the Argument............................................15

Standard of Review.................................................18

Argument...........................................................19

    I.    THE DISTRICT COURT ERRED IN DENYING MR. JENKINS'S REQUEST FOR A BENCH TRIAL ......................................19

        A. Criminal defendants have a right of waiver that applies to the right to a jury trial ........................................................19

        B. The district court erred in denying Mr. Jenkins the right to waive a jury trial under Federal Rule of Criminal Procedure 23(a) ......................21

    II.    THE DISTRICT COURT ERRED IN DENYING MR. JENKINS'S MOTION TO DISMISS COUNT TWO OF THE INDICTMENT ........26

        A. 18 U.S.C. § 1512(c)(2) does not apply to January 6 conduct .............26

        B. The prejudice from the district court's failure to dismiss Count Two requires reversal of the other counts of conviction .............................27

    III.    THE SENTENCES IMPOSED ON COUNTS SIX AND TEN VIOLATE THE DOUBLE JEOPARDY CLAUSE BECAUSE THOSE COUNTS ARE LESSER-INCLUDED OFFENSES OF COUNT EIGHT .............30

Conclusion ........................................................35

Certificate of Compliance ........................................................................36

Certificate of Service ..............................................................................36

Appendix .................................................................................. A1-A719

## <u>TABLE OF AUTHORITIES</u>

### *Cases*

*Ball v. United States*, 470 U.S. 856 (1985)................................................... 1, 30, 31

*Benton v. Maryland*, 395 U.S. 784 (1969)...............................................31

*\*Blockburger v. United States*, 284 U.S. 299 (1932) ............................. 1, 30, 31, 34

*Ingram v. United States*, 353 F.2d 872 (D.C. Cir. 1965).......................................31

*North Carolina v. Pearce*, 395 U.S. 711 (1969)........................................30

*\*Patton v. United States*, 281 U.S. 276 (1930)........................................... 19-22, 24

*People v. Cepeda*, 851 F.2d 1564 (9th Cir. 1988) ....................................29

*Singer v. United States*, 380 U.S. 24 (1965) ....................................... 21, 22, 24, 25

*United States v. Berkery*, 889 F.2d 1281 (3d Cir. 1989) ........................................29

*United States v. Caldwell*, 581 F. Supp. 3d 1 (D.D.C. 2021) .................................26

*United States v. David*, 511 F.2d 355 (D.C. Cir. 1975)................................... 23, 24

*\*United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023) ............................... 26, 27

*United States v. Ivic*, 700 F.3d 51 (2d Cir. 1983) ....................................28

*United States v. Jones*, 16 F.3d 487 (2d Cir. 1994)....................................28

*United States v. McLaughlin*, 164 F.3d 1 (D.C. Cir. 1998) ............................... 30, 31

*United States v. Pelullo*, 14 F.3d 881 (3d Cir. 1994)....................................... 28, 29

*United States v. Rooney*, 37 F.3d 847 (2d Cir. 1994) ...............................28

**(\*Authorities upon which this Brief chiefly relies are marked with asterisks.)**

iii

*United States v. Scurry*, 992 F.3d 1060 (D.C. Cir. 2021) ........................................18

*United States v. Verrusio*, 758 F. App'x 2 (D.C. Cir. 2019) ...............................27

*United States v. Wheeler*, 753 F.3d 200 (D.C. Cir. 2014) ........................................18

*United States v. Yakou*, 428 F.3d 241 (D.C. Cir. 2005)...........................................18

*Whalen v. United States*, 445 U.S. 684 (1980) ................................................ 34, 35

## *Constitutional Provisions and Statutes*

18 U.S.C. § 2 .........................................................................................................6

18 U.S.C. § 111 ....................................................................................................6

18 U.S.C. § 231(a)(3) ...........................................................................................6

18 U.S.C. § 641 ....................................................................................................6

18 U.S.C. § 1361 ..................................................................................................7

18 U.S.C. § 1512(c)(2) ................................................... 1, 2, 9, 15, 26, 27

18 U.S.C. § 1752 ...........................................................2, 3, 7, 29, 31-33

18 U.S.C. § 3231 ......................................................................................... vi

18 U.S.C. § 3742 ......................................................................................... vi

28 U.S.C. § 1291 ......................................................................................... vi

40 U.S.C. § 5104 ........................................................................... 4, 7, 33

U.S. CONST. Art. III, § 2, cl. 3 ......................................................................19

U.S. CONST. Art. VI, cl. 2 ...........................................................................21

U.S. CONST. amend. VI...............................................................................19

### *Other Authorities*

Federal Rule of Criminal Procedure 23(a)...................................................... 4, 21-23

Murray Gell-Mann, *The Interpretation of the New Particles as Displaced Charge Multiplets*, Il Nuovo Cimento vol. 4 supp. 2 848–866, available at https://inspirehep.net/files/cade926e919c1029f35e3fbc7165662e..........................20

Federal Rule of Criminal Procedure 23(a).................................................................x

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 18 U.S.C. § 3231. The district court pronounced sentence on October 6, 2023, and entered final judgment on October 27, 2023. A99.[1] Mr. Jenkins timely filed notice of appeal on October 23, 2023. A98. The government timely filed notice of appeal on November 22, 2023. A108. This Court has jurisdiction over Mr. Jenkins's appeal under 18 U.S.C. § 3742 and 28 U.S.C. § 1291, and it has jurisdiction over the government's appeal under 18 U.S.C. § 3742.

---

[1] Page numbers beginning with "A" refer to pages of the accompanying Appendix. "D.E." (Docket Entry) refers to documents that are part of the district court record in this case but are not part of the Appendix.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I.      Whether the district court erred in denying Mr. Jenkins's motion for bench trial, when Mr. Jenkins knowingly waived his right to a jury trial and the government consented to the waiver?

II.     Whether the district court erred in holding that 18 U.S.C. § 1512(c)(2), which makes it a crime to corruptly obstruct, influence, or impede an official proceeding, covers Mr. Jenkins's alleged conduct of obstructing Congress's certification of the Electoral College vote on January 6, 2021?

III.    Whether Mr. Jenkins's sentences on Counts Six and Ten violate the Double Jeopardy Clause because those counts are lesser-included offenses of Count Eight under *Blockburger v. United States*, 284 U.S. 299 (1932)?

## STATEMENT OF STATUTES AND REGULATIONS

The following statutes and regulations are pertinent to this appeal:

## 18 U.S.C. § 1512(c)

(c)     Whoever corruptly—

   (1)     alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

   (2)     otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

## 18 U.S.C. § 1752

(a)     Whoever—

   (1)     knowingly enters or remains in any restricted building or grounds without lawful authority to do so;

   (2)     knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions;

   (3)     knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions, obstructs or impedes ingress or egress to or from any restricted building or grounds; or

   (4)     knowingly engages in any act of physical violence against any person or property in any restricted building or grounds; [or]

   (5)     knowingly and willfully operates an unmanned aircraft system with the intent to knowingly and willfully direct or otherwise cause such

2

unmanned aircraft system to enter or operate within or above a restricted building or grounds;

or attempts or conspires to do so, shall be punished as provided in subsection (b).

(b)    The punishment for a violation of subsection (a) is—

(1)    a fine under this title or imprisonment for not more than 10 years, or both, if—

(A)    the person, during and in relation to the offense, uses or carries a deadly or dangerous weapon or firearm; or

(B)    the offense results in significant bodily injury as defined by section 2118(e)(3); and

(2)    a fine under this title or imprisonment for not more than one year, or both, in any other case.

(c)    In this section—

(1)    the term "restricted buildings or grounds" means any posted, cordoned off, or otherwise restricted area—

(A)    of the White House or its grounds, or the Vice President's official residence or its grounds;

(B)    of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or

(C)    of a building or grounds so restricted in conjunction with an event designated as a special event of national significance; and

(2)    the term "other person protected by the Secret Service" means any person whom the United States Secret Service is authorized to protect under section 3056 of this title or by Presidential memorandum, when such person has not declined such protection.

3

**40 U.S.C. § 5104(e)(2)(F)**

(2)    Violent entry and disorderly conduct.—An individual or group of individuals may not willfully and knowingly— [. . .]

    (F)    engage in an act of physical violence in the Grounds or any of the Capitol Buildings

**Federal Rule of Criminal Procedure 23(a)**

(a)    Jury Trial. If the defendant is entitled to a jury trial, the trial must be by jury unless:

    (1)    the defendant waives a jury trial in writing;

    (2)    the government consents; and

    (3)    the court approves.

## STATEMENT OF THE CASE

### I.    Relevant Factual Background

On January 6, 2021, Shane Jenkins came to Washington, D.C., to hear then-President Donald J. Trump speak at a rally. A175-76. Like thousands of others, he did so at President Trump's invitation. A176. And, although he never entered the Capitol building, he participated in the group action at its site that has come to characterize January 6. A197:25-A198:1. Like others, he brought otherwise-lawful items (such as a tomahawk axe) with him to Washington, and his participation in the events that ensued resulted in criminal charges against him. A178.

The details of the previously unfathomable scene that unfurled at the U.S. Capitol on January 6 are, largely, undisputed. On that date, a joint session of the U.S. House and Senate began with the purpose of certifying the vote count of the Electoral College of the 2020 presidential election. A219. That joint session began at approximately 1:00 p.m. in the House Chamber within the U.S. Capitol Building. *Id.* At the same time, a large crowd made its way to the Capitol, breached the security perimeter, and, at approximately 2:13 p.m., caused the Senate to enter into an emergency recess. A271-74 (testimony that the perimeter had been breached by 1:00 p.m.), A202 (testimony that the Senate took recess at 2:13 p.m.). At 2:29 p.m., the House likewise took recess, and the election certification proceedings remained

suspended until approximately six hours later, at which time the proceedings resumed and were concluded late that night. A204, A220.

Mr. Jenkins was among that large crowd.

On March 5, 2021, Mr. Jenkins was arrested, and he has remained in confinement ever since.

## II.    Procedural History

On March 24, 2021, a federal grand jury indicted Mr. Jenkins on various counts arising from January 6. After substantial pretrial litigation, on September 21, 2022, a federal grand jury issued a second superseding indictment, A21-25, charging Mr. Jenkins with ten crimes:

**Count One**: interfering with a law enforcement officer during commission of "a civil disorder" so as to effect interstate commerce, in violation of 18 U.S.C. § 231(a)(3).

**Count Two**: obstruction of an official proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2.

**Count Three**: resisting an officer with "a deadly and dangerous weapon, that is, stick-like objects, a flag pole, and a wooden desk drawer," in violation of 18 U.S.C. § 111(a)(1) and (b).

**Count Four**: theft of federal government property, for taking a riot shield with a value not exceeding $1000, in violation of 18 U.S.C. § 641.

6

**Count Five**: destruction of government property, for breaking a window with a value exceeding $1000, in violation of 18 U.S.C. § 1361.

**Count Six**: knowingly entering and remaining in a restricted area of U.S. Capitol grounds with a deadly weapon ("that is, a tomahawk axe, a flag pole, a desk drawer, and stick-like objects"), where the Vice President was temporarily visiting, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A).

**Count Seven**: knowing engaging in disorderly and disruptive conduct with the intent to impede and disrupt government business and official functions in a restricted area of U.S. Capitol grounds with a deadly weapon, where the Vice President was temporarily visiting, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A).

**Count Eight**: knowingly engaging in an "act of physical violence against any person and property" in a restricted area of U.S. Capitol grounds with a deadly weapon, where the Vice President was temporarily visiting, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A).

**Count Nine**: willfully and knowingly engaging in disorderly and disruptive conduct within a U.S. Capitol Building with intent to impede "the orderly conduct of a session of Congress," in violation of 40 U.S.C. § 5104(e)(2)(D).

**Count Ten**: willfully and knowingly engaging in an "act of physical violence" within Capitol grounds, 40 U.S.C. § 5104(e)(2)(F)

These charges fall roughly into four categories: (1) Count Two (obstruction) was the lead offense; (2) Counts One and Three alleged offenses against law enforcement officers; (3) Counts Four and Five alleged offenses against property; and (4) Counts Six through Ten alleged offenses pertaining to Mr. Jenkins's presence on Capitol grounds with various objects. (Note: For the purpose of the jury verdict form only, A56-59, Counts Five through Ten were renumbered as Counts Four through Nine (in the same order), because a judgment of acquittal was entered on the original Count Four immediately prior to the jury charge, on the grounds that the shield that had been taken was District of Columbia property rather than federal government property. A597:18-23. This was done in order to avoid confusing the jury by omitting a Count Four altogether. *Id.* This brief uses the original numbering of the counts as listed above, as listed on the Second Superseding Indictment, and as listed on the Judgment.)

*Relevant Pretrial Litigation*

In January and February 2023, defense counsel filed three motions relevant to this appeal; Mr. Jenkins appeals the denial of two of these three motions. First, defense counsel filed a motion to change venue to outside the District of Columbia on the grounds that the publicity of the trial together with the relatively small population of the District and the status of the District's residents as victims of January 6 made it unlikely that a jury of such residents would be impartial. A26-41.

8

The district court denied the motion, A122, and Mr. Jenkins does not appeal that ruling.

Second, defense counsel filed a motion to dismiss Count Two (obstruction) under Fed. R. Crim. P. 12(b) on the grounds that the obstruction statute, 18 U.S.C. § 1512(c)(2), applies only to obstruction of trial-like proceedings, not to obstruction of the certification of an Electoral College vote. D.E. 48. The district court denied the motion at a March 10, 2023, pretrial conference, and Mr. Jenkins appeals that ruling. A124.

Third, defense counsel filed an unopposed motion for a bench trial, pursuant to Fed. R. Crim. P. 23, on the grounds that Mr. Jenkins preferred to waive (and did in fact knowingly and intelligently waive) his constitutional right to a jury, the government consented to a bench trial, and the nature of the case was such that very few facts were in dispute. A42-50. The district court also denied this motion at the March 10, 2023, pretrial conference, and Mr. Jenkins appeals that ruling. A121.

*Trial*

Trial began with jury selection on March 21, 2023, and it continued for several days, during which the government called seven witnesses to testify concerning Mr. Jenkins's presence on Capitol Grounds on January 6, his alleged conduct of striking a window and of throwing objects into the lower West Terrace tunnel, and his text message and social-media communications. But, beginning with its opening

statement and throughout the three trial days (March 22, 23, and 27), the government made Count Two (obstruction of an official proceeding) the star of its show:

- A161:19-21 ("You are going to see his anger about the election results, his determination to stop the certification of the Electoral College vote");

- A162:2-3 ("You're going to see evidence of the defendant's knowledge of the Electoral College certification process.");

- A169:22-25 ("You will hear how on this very important day, the certification of the Electoral College vote, this defendant and the other rioters prevented Congress from doing their job.");

- A170:2-4 ("each and every one of those rioters contributed to the halting of the Electoral College certification process");

- A198:4-8, 23-25 (government counsel explaining to the district court that the reason it had elicited testimony from Lieutenant McCree about whether Capitol staff had "their guns drawn" was "to establish that there was an official proceeding that was disrupted");

- A211:13-15 ("I want to present to you some exhibits that relate to the legal basis for the official proceeding of the certification of the vote");

- A263:10-12 (government counsel attempting to justify a line of questioning to which the district court had sustained a series of objections on the

grounds that it "had to do with the official proceeding that was happening in the Senate").

- A502:14, A502-06, A524-25 (admitting Mr. Jenkins's text messages and social-media comments to show his intent to interfere with the certification of the election).

*    *    *

During the course of the trial, the government also used every opportunity to present evidence of violence against law enforcement officers on January 6, even when that evidence had nothing to do with Mr. Jenkins: as the district court clarified, A262:4-21, Mr. Jenkins did not arrive at the lower West Terrace until 3:00 p.m., yet the government devoted substantial efforts to eliciting testimony about what officers observed between 2:00 and 2:30 p.m.—i.e., well before Mr. Jenkins's arrival—and the government presented evidence of what happened after Mr. Jenkins left:

- *See, e.g.*, A164:23-25 ("You are going to hear from officers about how the sea of rioters completely overtook the police lines, and the police were overwhelmed.");

- A259:3-5 (sustaining objection to government's attempt to elicit Lieutenant McCree's testimony as to "whether or not any violence occurred at the lower West Terrace tunnel during the riot" when there was no foundation to assert that Lieutenant McCree had personally observed any such violence);

11

- A259:7-10 (sustaining objection to government's questioning, "Lieutenant McCree, were any of your officers injured on January 6th, 2021? [. . .] Were any of them injured at the lower West Terrace tunnel?");

- A259-60 (sustaining series of further objections attempting to elicit inadmissible testimony by Lieutenant McCree, all pertaining to alleged violence of which Lieutenant McCree had no first-hand knowledge);

- A262:17-21 (district court ruling that "whether officers were able to carry out their functions inside the chambers [at 2:29 p.m.], it's really not relevant to charges against this defendant");

- A263:22-25 (district court ruling: "Whatever official functions that particular element or that count that you're seeking to establish that Mr. Jenkins impeded, he can't testify about what happened at 2:30 or even at 2:45 until he actually gets there.");

- A264:8-11 (district court ruling: "I don't think it's appropriate to ask him about the inability to perform police duties at a time that Mr. Jenkins was not even on the Capitol Grounds, so far as we know");

- A291:25-A292:12 (district court providing limiting instruction after government witness illicitly testified about individuals who were "fighting with the Capitol police officers who were trying to hold them back");

12

- A425:21-A426:4 (district court cautioning the government to stop showing video footage of January 6 events that occurred *after* Mr. Jenkins had left: "That's what I'm trying to avoid again. So, you know, it came in, I didn't know what was going to be shown, there was no objection. But I want to be very mindful of this going forward with these very long videos. So if at some point Mr. Jenkins is no longer in the scene or whatever happens after he's left the scene is no longer relevant, then my expectation is it will be cut off there and it will be cut off there for purposes of it going back to the jury as well.");

- A582:11-14 (testimony of Metropolitan Police officer that he was "hit in the head with a brick or cinderblock"—even though Mr. Jenkins was not alleged to have thrown any object like that);

- A649:22-A650:7, A655:13-A656:24 (government's closing argument regarding obstruction of an official proceeding).

\* \* \*

The result was a trial where the jury was reminded, time and time again, that the thrust of the January 6 action was to disrupt an "official proceeding"—that is, to disrupt the certification of the Electoral College vote—by violent force.

The defense called no witnesses and instead held the government to its burden. Prior to closing arguments, the district court ironed out its jury charge and entered a judgment of acquittal on original Count Four, leaving nine counts for the jury to

13

deliberate. A597. The jury deliberated all day on March 28, 2023, and returned a guilty verdict on all counts on March 29, 2023. A56-59.

On October 6, 2023, the district court sentenced Mr. Jenkins to concurrent terms of sixty months of imprisonment on Count One; eighty-four months of imprisonment on Counts Two, Three, and Five through Eight; and six months of imprisonment on Counts Nine and Ten, for a total sentence of eighty-four months of imprisonment followed by three years of supervised release. A99-107.

This appeal follows.

## SUMMARY OF THE ARGUMENT

*First*, the district court erred in denying Mr. Jenkins's unopposed motion for a bench trial. When a defendant knowingly and intelligently waives the right to a jury trial and the government consents to that waiver, at least under circumstances where the defendant has legitimate concerns of jury partiality and there are no doubts about the defendant's competency, the defendant has a right to waive a jury trial and proceed instead to a bench trial. Federal Rule of Criminal Procedure 23(a) requires a district court to approve such a waiver, but that approval provision does not mean that a court may require a jury under these circumstances; to the extent that it does, that provision unconstitutionally infringes a fundamental right of waiver.

*Second*, the district court erred in denying Mr. Jenkins's motion to dismiss Count Two of the indictment, which was for obstruction of an official proceeding under 18 U.S.C. § 1512(c)(2). That statutory provision applies only to acts that affect the integrity or availability of evidence, not to January 6 conduct. The Supreme Court is slated to decide this Term, in *United States v. Fischer*, whether that statute can apply to January 6 conduct, and the Supreme Court's decision in that case will likely control this issue. If this Court vacates Count Two, this Court should also reverse the remaining counts of conviction and remand for retrial because of the prejudice of the evidence of Count Two that likely spilled over and affected the jury's decision to convict on other counts.

15

*Third*, Counts Six and Ten are lesser-included offenses of Count Eight because their elements are subsets of Count Eight's elements. Count Eight required the government to prove that Mr. Jenkins knowingly "engaged in an act of physical violence" while in a restricted building or grounds (here, the Capitol) and that he used or carried a deadly or dangerous weapon while doing so. Count Six is a subset of Count Eight because it required the government to prove that Mr. Jenkins knowingly "entered or remained" in a restricted building or grounds (here, the Capitol) and that he used or carried a deadly or dangerous weapon while doing so. Because one cannot engage in an act of violence in a place without necessarily entering or remaining in that place, Count Six is a lesser-included offense of Count Eight, and this Court should vacate Mr. Jenkins's sentence on Count Six as violating the Double Jeopardy Clause. Count Ten is also a subset of Count Eight because it required the government to prove that Mr. Jenkins willfully and knowingly "engaged in an act of physical violence" on U.S. Capitol grounds or in a U.S. Capitol building. Because proving the elements of Count Eight necessarily required proving the elements of Count Ten, this Court should also vacate Mr. Jenkins's sentence on Count Ten as violating the Double Jeopardy Clause.

This Court should thus vacate Mr. Jenkins's convictions on Counts Two, Six, and Ten and remand for retrial on the remaining counts (subject to Mr. Jenkins's right to elect or waive trial by jury on remand). Alternatively, Mr. Jenkins asks this

Court to vacate his conviction on Count Two and remand for retrial on the remaining counts (again subject to Mr. Jenkins's right to elect or waive trial by jury on remand). Alternatively, Mr. Jenkins asks this Court to vacate his conviction on Count Two and remand for resentencing.

## STANDARD OF REVIEW

Whether a district court properly denied a motion for bench trial is a question of law and is thus reviewed *de novo*. *United States v. Scurry*, 992 F.3d 1060, 1065 (D.C. Cir. 2021).

Whether a district court properly denied a motion to dismiss a portion of the indictment is a question of law and is thus reviewed *de novo*. *United States v. Yakou*, 428 F.3d 241, 246 (D.C. Cir. 2005).

Whether a district court unconstitutionally sentenced a defendant under separate criminal statutes for the same conduct, in violation of the Double Jeopardy Clause, is a question of law and is thus reviewed *de novo*. *United States v. Wheeler*, 753 F.3d 200, 209 (D.C. Cir. 2014).

# ARGUMENT

## I.  THE DISTRICT COURT ERRED IN DENYING MR. JENKINS'S REQUEST FOR A BENCH TRIAL.

The right to a jury trial in criminal cases is enshrined once in the original Constitution and again in the Sixth Amendment. U.S. CONST. Art. III, § 2, cl. 3 ("The Trial of all Crimes, except in Cases of Impeachment; shall be by Jury."); U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . .").

This right exists as "understood and applied at common law, and includes all the essential elements as they were recognized in this country and England when the Constitution was adopted . . . . Those elements were—(1) that the jury should consist of twelve men, neither more nor less; (2) that the trial should be in the presence and under the superintendence of a judge having power to instruct them as to the law and advise them in respect of the facts; and (3) that the verdict should be unanimous." *Patton v. United States*, 281 U.S. 276, 288 (1930).

### A. Criminal defendants have a right of waiver that applies to the right to a jury trial.

In *Patton*, the Supreme Court addressed the issue of whether criminal defendants had the power to waive the right to a jury of twelve and instead proceed with eleven jurors after one juror had fallen ill. *Id.* at 286. The Court clarified that there was no distinction "between the effect of a complete waiver of a jury and

19

consent to be tried by a less number than twelve," *id.* at 290, and it then held that the common-law "right of waiver," *id.* at 296, which *predated the Founding* and was preserved in our constitutional system, permitted a defendant to waive the right to a jury trial because the jury right existed "for the protection of the accused." *Id.* at 297 (explaining that in England, unlike in America, the right of waiver could be withheld from accused parties because the effect of a criminal conviction was not only upon the accused but also upon third parties such as the accused's heirs or successors whose property interests may have been subject to divestment upon the accused's conviction).

In short, the Court held, the jury right "was meant to confer a right upon the accused which he may forego at his election. To deny his power to do so, is to convert a privilege into an imperative requirement." *Id.* at 298; *cf.* Murray Gell-Mann, *The Interpretation of the New Particles as Displaced Charge Multiplets*, Il Nuovo Cimento vol. 4 supp. 2 848–866, at 859 n.*, available at https://inspirehep.net/files/cade926e919c1029f35e3fbc7165662e ("Anything that is not compulsory is forbidden"—or, as the totalitarian principle is more commonly phrased: everything that is permitted is compulsory).

For ninety-four years, *Patton* has thus stood for the proposition that there is a fundamental right to waiver of the right to a jury—that is, the *right* to a jury does not by necessity imply the *requirement* of a jury. There is no reason to depart from that

principle in requiring a jury trial in this case over Mr. Jenkins's knowing and intelligent waiver and the government's consent.

### B. The district court erred in denying Mr. Jenkins the right to waive a jury trial under Federal Rule of Criminal Procedure 23(a).

The Federal Rules of Criminal Procedure were drafted in 1944 and first took effect in 1946, well after *Patton* was decided. The original notes of the Advisory Committee state: "The provision for a waiver of jury trial by the defendant embodies existing practice, the constitutionality of which has been upheld." Advisory Committee Note 2 to Subdivision (a) of Fed. R. Crim. P. 23 (citing *Patton*).

Rule 23 must be interpreted so as to be consistent with the Constitution. *See* U.S. CONST. Art. VI, cl. 2. Rule 23(a)'s requirement of a court's approval of a defendant's waiver of the right to a jury trial must, therefore, be limited to the extent necessary to ensure that a defendant has made that waiver knowingly and intelligently. (To the extent that Rule 23(a) does more than that, it unconstitutionally infringes Mr. Jenkins's right to waiver.) The district court erred as a matter of law in reading the approval provision so broadly as to permit a court to *deny* waiver simply because a case is more serious than a "run-of-the-mill case" or because a court disagrees with a defendant's contention that the circumstances of a case decrease the likelihood of jury impartiality. A117.

The district court relied heavily on *Singer v. United States*, 380 U.S. 24 (1965), in denying Mr. Jenkins's motion for a bench trial. But *Singer* raised a

different issue from the issue presented here: there, the issue was whether Rule 23(a)'s requirement of *government consent* unconstitutionally infringed the defendant's right of waiver. *Singer*, 380 U.S. at 26. And the Supreme Court's decision in *Singer*, which held that there was no *absolute* right to waiver of a jury trial that was sufficient to defeat the requirement of government consent, was limited: as the Court observed, the defendant in that case "gave no reason for wanting to forgo jury trial other than to save time"—with the result that the *Singer* Court expressly declined to pass judgment on the more significant question of to what extent a defendant's right to waive a jury trial may, if at all, be limited when "'passion, prejudice . . . public feeling' or some other factor may render impossible or unlikely an impartial trial by jury." *Singer*, 380 U.S. at 37-38.

*Patton*, in Mr. Jenkins's view, readily answers that more significant question: "To deny his power to do so, is to convert a privilege into an imperative requirement." *Patton*, 281 U.S. at 298. To the extent that *Singer* departs from *Patton*, that departure is limited only to condoning Rule 23(a)'s requirement of government consent (which is not at issue in this case) in a case in which the defendant's only claimed ground for waiving the jury right was to save time. The district court thus erred in viewing *Singer* as controlling this case. A116 (discussing *Patton* and *Singer* while, notably, misidentifying *Singer* as *Patton* and incorrectly declaring that *Singer* was decided in the same year as *Patton*).

The district Court also erred in relying on this Court's decision in *United States v. David*, 511 F.2d 355 (D.C. Cir. 1975). In *David*, this Court rejected the defendant's waiver of a jury trial because (1) the defendant's "substantial psychiatric history" and other facts created "concern both as to [his] competency and his ability to knowingly waive his jury trial right" and (2) the trial court's procedure to attempt to validate the intelligence of the defendant's waiver was laughably cursory:

The entire interrogation of David was as follows:

THE COURT: Mr. David, you understand, do you, that you have a constitutional right to be tried by a jury and if you would like to be, that is your wish? We understand from your counsel that you have indicated that you wish to waive your jury trial and be tried by the Court. Is that correct?

THE DEFENDANT: Well, so far as I am concerned, it really doesn't make that much difference. ***Well, not being that familiar with this type of thing, I wouldn't know whether it would be to my advantage or disadvantage***.

THE COURT: Do you rely upon your attorney's recommendation?

THE DEFENDANT: Really, I have no other alternative. ***I am assuming that he is a competent attorney. I am hoping that he is***.

THE COURT: ***The Court has always found him to be***.

 *David*, 511 F.2d at 361-62 (emphases added).

If anything, *David* stands for the proposition that Rule 23(a)'s requirement of court approval exists chiefly to ensure that a court takes reasonable steps in determining that a defendant has, in fact, knowingly and intelligently waived the

right to a jury trial. It does nothing to undermine *Patton*'s teaching that a fundamental right of waiver applies to the jury right just as it does to other personally held rights. Indeed, it aligns with *Patton*'s closing remarks that cautioned trial courts not to be too quick in finding waiver: "The duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity." *Patton*, 281 U.S. at 312-313. These remarks from *Patton* reflect a concern that trial courts might too readily (*i.e.*, "as a mere matter of rote") find waiver in order to dispense with the constitutional right to a jury trial—as happened in the district court in *David*—but they do not give *carte blanche* to trial courts to deny an otherwise valid exercise of the right waiver.

The district court, however, relied on *Singer* and *David* in ruling "that both the gravity of the case and the lack of compelling circumstances for a bench trial warrant denial of the request." A117. The district court incorrectly took *Patton*'s closing remarks to imply that "the gravity of the case" *counseled against waiver* rather than simply increasing the need for the trial court to ensure that Mr. Jenkins's waiver was knowing and intelligent. The district court also looked to the public interest to require a jury trial, but the public interest is in ensuring that the right to a jury (when claimed) is honored, not in denying a legitimate waiver just because a

24

case is "not a run-of-the-mill case." A117. The district court continued: "I don't see why I have any greater ability to interpret intent than would 12 citizens of the District of Columbia." A119. And the district court dismissed the contention that it was "less likely to exhibit bias toward the evidence or be inflamed by [it]" than a jury. *Id.* But the issue before the district court was not whether the court would or would not exhibit less bias than the jury; rather, the issue was whether the defendant's legitimate fears of jury impartiality (as set forth in defendant's motion to change venue, for instance) raised the kinds of concerns—unlike the mere desire to "save time" in *Singer*—that required the court to approve his knowing and intelligent waiver of his right to a jury. As Mr. Jenkins made clear to the district court in his motion for change of venue and his unopposed motion for bench trial, Mr. Jenkins had grave and factually justified concerns that the residents of the District of Columbia—themselves being the victims of January 6—might present risks of partiality if empaneled as his jury. A33-38, A48.

The district court erred in denying Mr. Jenkins's request to waive his right to a jury trial. This Court should thus reverse the judgment and sentence below and remand for retrial (subject to Mr. Jenkins's right to elect or waive trial by jury on remand) on any counts of the Second Superseding Indictment that remain subject to retrial after considering Mr. Jenkins's arguments in Section II and Section III of this brief, below.

## II.    THE DISTRICT COURT ERRED IN DENYING MR. JENKINS'S MOTION TO DISMISS COUNT TWO OF THE INDICTMENT.

### A. 18 U.S.C. § 1512(c)(2) does not apply to January 6 conduct.

At the final pretrial conference, the district court denied Mr. Jenkins's motion to dismiss Count Two. The issue was whether 18 U.S.C. § 1512(c)(2), which makes it a crime to corruptly obstruct, influence, or impede an official proceeding, covers Mr. Jenkins's alleged conduct of obstructing Congress's certification of the Electoral College vote on January 6, 2021. The district court denied the motion for the reasons that it had previously articulated in *United States v. Caldwell*, 581 F. Supp. 3d 1, 11-15 (D.D.C. 2021). A124:7-10. Notably, mere days after Mr. Jenkins's trial concluded, a panel of this Court issued a splintered opinion in *United States v. Fischer*, 64 F.4th 329, 350 (D.C. Cir. 2023), *cert. granted*, 2023 WL 8605748 (Dec. 13, 2023), holding that the statutory provision in question, 18 U.S.C. § 1512(c)(2), did in fact apply to the conduct of various other January 6 defendants. But on December 13, 2023, the United States Supreme Court granted certiorari in that case: it is set to hear argument on April 16, 2024, and to rule on that case sometime this Term (*i.e.*, by June 2024), with the consequence that its decision will almost certainly control the outcome of this issue in Mr. Jenkins's appeal as well.

Mr. Jenkins raises the same arguments raised by the defendants in *Fischer* and amply elucidated by Judge Katsas in his dissenting opinion thereto. First, the "otherwise" in § 1512(c)(2) means "in other *like* manner," *not* "in a manner different

26

from," such that § 1512(c)(2) applies "only to acts that affect the integrity or availability of evidence." *Fischer*, 64 F.4th at 363 (Katsas, J., dissenting). Second, any ambiguity in the meaning of "otherwise" in § 1512(c)(2) should be resolved in favor of Mr. Jenkins in light of "the presumption against surplusage, the related canons of *ejusdem generis* and *noscitur a sociis*, the structure of section 1512, the history of that section, precedent construing it, the improbable and unconstitutional breadth of the government's interpretation, and the rule of lenity." *Fischer*, 64 F.4th at 371 (Katsas, J., dissenting). For these reasons, the district court erred in denying Mr. Jenkins's motion to dismiss.

When the Supreme Court weighs in on this issue, Mr. Jenkins will file a Rule 28(j) letter setting forth the implications of that decision. Mr. Jenkins suspects that if the Supreme Court affirms this Court's ruling in *Fischer*, then the decision of the Supreme Court will likewise require affirmance here; if the Supreme Court reverses, however, then that decision will require reversal here.

### B. The prejudice from the district court's failure to dismiss Count Two requires reversal of the other counts of conviction.

Assuming this Court grants Mr. Jenkins relief as to Count Two, this Court should also reverse and remand for retrial as to the other counts of conviction (except as to any counts vacated under Section III of this brief). That is because the prejudice from Count Two infected the entirety of Mr. Jenkins's trial. *See United States v. Verrusio*, 758 F. App'x 2, 4-5 (D.C. Cir. 2019) (discussing the notion that vacatur

of one count of conviction may require vacatur of other counts because of the prejudice caused by evidence of the vacated count).

In short, "[w]hen an appellate court reverses some but not all counts of a multicount conviction, the court must determine if prejudicial spillover from evidence introduced in support of the reversed count requires the remaining convictions to be upset. When confronted with a problem of taint, we must 'consider whether the presence of the [invalidated] count had any spillover effect sufficiently prejudicial to call for reversal' of the remaining counts." *United States v. Rooney*, 37 F.3d 847, 855 (2d Cir. 1994) (citing *United States v. Ivic*, 700 F.2d 51, 65 (2d Cir. 1983) and *United States v. Jones*, 16 F.3d 487, 493 (2d Cir. 1994) (stating that "prejudicial spillover from evidence used to obtain a conviction subsequently reversed on appeal may constitute compelling prejudice" that requires overturning remaining counts)); *see also United States v. Pelullo*, 14 F.3d 881, 899-900 (3d Cir. 1994) (ordering retrial "on all 48 wire fraud counts" of conviction where there was "jury-arousing evidence and pejorative branding" of the defendant that made it likely that Count 54, which was vacated due to an erroneous collateral-estoppel ruling, "had a substantial spillover effect on the remaining counts of the indictment"). The *Pelullo* Court stated:

> While we recognize that prejudicial spillover effect can hardly be ascertained with precision, nevertheless we conclude that the jury was probably influenced by the error on Count 54. When evaluating taint or spillover effect, courts have applied a test somewhat favorable to the

defendant. *See United States v. Berkery*, 889 F.2d 1281, 1285 (3d Cir. 1989) ("we cannot say that we are convinced that the jury could not have seized the defendant's admission to Counts 1 and 15 and used those admissions to convict Berkery of Counts 2-14"); *People v. Cepeda*, 851 F.2d 1564, 1568 (9th Cir. 1988) ("As we are unable to conclude that this evidence [on an invalid count] did not influence the jury's verdict on the other counts of the indictment, we will order a new trial on all counts.").

14 F.3d at 899-900.

Like *Pelullo*, this was plainly a case rife with "jury-arousing evidence and pejorative branding" of Mr. Jenkins. As chronicled in the Statement of the Case, the government went to great lengths to prove that Mr. Jenkins came to Washington to disrupt the certification of the Electoral College vote. *See* A161:19-21; A162:2-3; A169:22-25; A170:2-4; A198:4-8, 23-25; A211:13-15; A263:10-12; A502:14, A502-06, A524-25. And the government went to great lengths to prove that violence was carried out towards that end. *See* A164:23-25; A259:3-5; A259:7-10; A259-60; A262:17-21; A263:22-25; A264:8-11; A291:25-A292:12; A425:21-A426:4; A582:11-14; A649:22-A650:7, A655:13-A656:24. Despite that, the jury's notes indicate that even after a full day of deliberating, the jury had complex questions about what evidence was required to prove other counts of the indictment. *See* A52-53 (indicating uncertainty about how to identify which weapons qualify for element three of the 18 U.S.C. § 1752(a)(1) offense). It is at least reasonably probable, that in the absence of all the evidence that the government marshaled in support of Count Two, the jury may have reached a different result as to one of the other counts. Mr.

Jenkins thus requests that, if this Court vacates his conviction under Count Two, it likewise reverse and remand for retrial as to any other counts of conviction that remain after considering Mr. Jenkins's arguments in Section III of this brief, below.

### III. THE SENTENCES IMPOSED ON COUNTS SIX AND TEN VIOLATE THE DOUBLE JEOPARDY CLAUSE BECAUSE THOSE COUNTS ARE LESSER-INCLUDED OFFENSES OF COUNT EIGHT.

The Double Jeopardy Clause protects, among other things, "against multiple punishments for the same offense." *United States v. McLaughlin*, 164 F.3d 1, 8 (D.C. Cir. 1998) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). The Supreme Court in *Blockburger v. United States*, 284 U.S. 299 (1932), articulated a test to determine whether two offenses count as the "same offense" for the purpose of Double Jeopardy: if, upon comparison of the elements of two offenses, "each [offense] requires proof of a fact which the other does not," *Blockburger*, 284 U.S. at 304, then the *Blockburger* test is satisfied (meaning, the two offenses are *not* the "same" as each other), and there is a presumption of the constitutionality of simultaneous application of and punishment for the two offenses. *McLaughlin*, 164 F.3d at 8. If, however, "the [offenses] do not each require an element that the other does not, the *Blockburger* test is not satisfied, indicating that simultaneous application of the two provisions was not intended"—that is, that the two offenses are the "same" and cannot be punished simultaneously. *McLaughlin*, 164 F.3d at 8.

The idea is that even though, for instance, robbery and larceny are not literally the *same* offense as each other, for robbery is a larceny committed by force or threat of force, larceny is a lesser-included offense of robbery (and thus, for *Blockburger* purposes, counts as the "same" offense as robbery) because larceny does not require proof of any facts beyond what robbery requires. *Cf. Ingram v. United States*, 353 F.2d 872, 877 (D.C. Cir. 1965). And, according to *Blockburger*, there is a "constitutional presumption" against simultaneously punishing two offenses where either one is a lesser-included offense of the other. *McLaughlin*, 164 F.3d at 8. Moreover, "the Supreme Court has made clear that the propriety of multiple convictions must be carefully considered even where the sentences are concurrent." *McLaughlin*, 164 F.3d at 16 (citing *Ball v. United States*, 470 U.S. 856, 865 (1985); *Benton v. Maryland*, 395 U.S. 784, 790 (1969)). Applying the *Blockburger* test here requires reversal of Counts Six and Ten, both as lesser included offenses of Count Eight.

**Count Six**. (As a reminder, Count Six was labeled "Count Five" in the jury charge only, because original Counts Five through Ten were renumbered Counts Four through Nine, following the entry of acquittal on original Count Four, in order to avoid confusing the jury with an omitted Count Four, A597:18-23). According to the jury charge, Count Six (a violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A))

31

required the government to prove that Mr. Jenkins committed three elements beyond

a reasonable doubt:

> First, that the defendant entered or remained in a restricted building or grounds without lawful authority to do so.
> Second, that the defendant knew that the building or grounds was restricted and he knew that he lacked the lawful authority to enter or remain there.
> Third, that the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.

A83-84 (Original Count Six / Jury Charge Count Five).

This was a lesser-included offense of Count Eight (a violation of 18 U.S.C. §

1752(a)(4) and (b)(1)(A)), and it is thus the "same" offense as Count Eight under

*Blockburger*, because it did not require the proof of any additional fact beyond what

Count Eight required, which was the following three elements:

> First, the defendant engaged in an act of physical violence against a person or property in, or in proximity to, a restricted building or grounds.
> Second, the defendant did so knowingly.
> Third, the defendant used or carried a deadly or dangerous weapon during and in relation to the offense.

A88 (Original Count Eight / Jury Charge Count Seven).

In simple terms, Count Six required the government to prove that Mr. Jenkins

knowingly "entered or remained in a restricted building or grounds" and that he

"knowingly used or carried a deadly or dangerous weapon" while doing so. But

Count Eight required the government to prove all that and more: for Count Eight,

the government had to prove that Mr. Jenkins knowingly acted violently "in a

32

restricted building or grounds"—which one cannot do without entering or remaining there— and that he "knowingly used or carried a deadly or dangerous weapon" while doing so. To be sure, the jury charge on Count Eight permitted the jury to find only that Mr. Jenkins was "in proximity to" rather than "in" a restricted area, but that "proximity" language is inconsistent with the plain text of 18 U.S.C. § 1752(a)(4) and is immaterial here, where Mr. Jenkins was "in" Capitol territory. Because there is no way to commit the elements of Count Eight without thereby committing the elements of Count Six, it is not the case that each of those counts "requires proof of a fact which the other does not." Thus, this Court should vacate Mr. Jenkins's conviction on Count Six.

**Count Ten**. According to the jury charge, Count Ten (a violation of 40 U.S.C. § 5104(e)(2)(F)) required the government to prove that Mr. Jenkins committed two elements beyond a reasonable doubt:

> First, that the defendant engaged in an act of physical violence in the United States Capitol Grounds or any of the Capitol Buildings.
> Second, that the defendant acted willfully and knowingly.

A91 (Original Count Ten / Jury Charge Count Nine). As with Count Six, this offense states a subset of Count Eight: there is no way the government could have proved the elements of Count Eight (knowingly engaging in physical violence against a person or property in a restricted area—here, on Capitol Grounds or in a Capitol Building—while using or carrying a deadly or dangerous offense) without thereby

33

proving the elements of Count Ten. There is the superficial wrinkle that Count Ten specifies "in the United States Capitol Grounds or any of the Capitol Buildings," whereas Count Eight applies simply in "a restricted building or grounds." But the restricted building or grounds in this case can only be the Capitol.

This situation is analogous to what the Supreme Court confronted in *Whalen v. United States*, 445 U.S. 684, 694 (1980). There, the question was whether felony murder and rape were the "same" offense under *Blockburger*, and the Supreme Court held that they were, because the only predicate offense for the felony-murder count in that case was rape. *Id.* The fact that a felony-murder charge based on a different predicate felony (like burglary or arson) would not count as the same offense as rape was irrelevant. *Id.* The Court held:

> Where the offense to be proved does not include proof of a rape—for example, where the offense is a killing in the perpetration of a robbery—the offense is of course different from the offense of rape, and the Government is correct in believing that cumulative punishments for the felony murder and for a rape would be permitted under *Blockburger*. In the present case, however, proof of rape is a necessary element of proof of the felony murder, and we are unpersuaded that this case should be treated differently from other cases in which one criminal offense requires proof of every element of another offense. There would be no question in this regard if Congress, instead of listing the six lesser included offenses in the alternative, had separately proscribed the six different species of felony murder under six statutory provisions. It is doubtful that Congress could have imagined that so formal a difference in drafting had any practical significance, and we ascribe none to it.

34

*Id.* Likewise, here, the fact that Count Eight's location element is "a restricted building or grounds" is immaterial, because in *this case*, only a place that satisfies the location element of Count Ten (that is, "in the United States Capitol Grounds or any of the Capitol Buildings") could possibly have satisfied the location element of Count Eight. Because there was no way for the government to prove that Mr. Jenkins committed the elements of Count Eight without thereby proving that he committed the elements of Count Ten, it is not the case that each of those counts "requires proof of a fact which the other does not." Thus, this Court should vacate Mr. Jenkins's conviction on Count Ten.

## CONCLUSION

For the foregoing reasons, Mr. Jenkins respectfully asks this Court to vacate his conviction on Counts Two, Six, and Ten, and to remand for retrial on the remaining counts (subject to Mr. Jenkins's right to elect or waive trial by jury on remand); alternatively, Mr. Jenkins asks this Court to vacate his conviction on Count Two and remand for retrial on the remaining counts (again subject to Mr. Jenkins's right to elect or waive trial by jury on remand); alternatively, Mr. Jenkins asks this Court to vacate his conviction on Count Two and remand for resentencing.

Date: February 16, 2024                Respectfully submitted,

                                       /s/ Kyle Singhal
                                       Kyle Singhal
                                       Shon Hopwood
                                       HOPWOOD & SINGHAL PLLC

35

1701 Pennsylvania Ave., NW #200
Washington, D.C. 20006
Telephone: (202) 769-4080
kyle@hopwoodsinghal.com
*Counsel for Shane Jenkins*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with Fed. R. App. P. 27 and 32 because the countable portion thereof contains 7461 words and was typed in 14-point Times New Roman font.

Respectfully submitted,

/s/ Kyle Singhal
Kyle Singhal
*Counsel for Shane Jenkins*

## CERTIFICATE OF SERVICE

I certify that on this date, a copy of the foregoing brief and the accompanying appendix was served upon Appellee by electronic filing.

Respectfully submitted,

/s/ Kyle Singhal
Kyle Singhal
*Counsel for Shane Jenkins*